UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| NURSING CE CENTRAL LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 23-232-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| COLIBRI HEALTHCARE, LLC, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Nursing CE Central LLC ("CE Central") asks the Court to grant a temporary restraining order and preliminary injunction prohibiting Defendant Colibri Healthcare, LLC ("Colibri") from using its business name and registered trademark in online digital advertisements. [Record No. 5] Colibri responded, arguing that CE Central is not likely to succeed on the merits of its claims, while acknowledging that it has discontinued using the subject trademark in its online ads. The Court held a hearing to consider the merits of CE Central's motion on August 16, 2023. Based on the materials submitted and parties' arguments, the undersigned concluded that CE Central has not shown a likelihood of success on the merits or that it will be irreparably harmed absent the issuance of injunctive relief. Therefore, the motion for injunctive relief will be denied.

**I.**

CE Central provides continuing education courses for nurses. It trademarked "Nursing CE Central" with the U.S. Patent and Trademark Office ("USPTO") as its primary business name on August 18, 2020. [Record No. 1-1 (Reg. No. 6,129,162)] Colibri also provides

-1-

continuing education courses for nurses and other service professionals. It has filed applications with the USPTO for registration of the names "Elite Learning" and "Elite Learning by Colibri Healthcare." [Record Nos. 1-2, 1-3 (Ser. Nos. 97,799,534 and 97,799,535)] Between April 2021 and June 2022, CE Central and Colibri discussed a potential joint business venture, but nothing materialized. [Record No. 1, pp. 6] Thereafter, in October 2022, Colibri contracted with a third-party (which uses Google, Inc.) to provide and manage its online advertising and marketing services. [Record No. 16]

CE Central alleges that Colibri, one of its direct competitors, uses its "Nursing CE Central" trademark in the text of its Google ads to divert consumers away from the plaintiff's website. [Record No. 1, pp. 7] CE Central contends that the ads referencing its trademarked name directs consumers to Colibri's website for the purpose of selling its goods and services by deception. CE Central asserts that this conduct began on or about July 5, 2023. [Record No. 1, ¶ 21] However, Colibri denies that CE Central is entitled to federal trademark protection because the plaintiff's name is not such a distinctive mark that reference to it in an online ad (which also contains descriptions specific to Colibri's business) creates consumer confusion. [Record No. 16]

## II.

CE Central bears the burden of establishing that injunctive relief is proper. *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). The grant of a temporary restraining order is within the discretion of the district court, while "[a] preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Dinter v. Miremami*, 627 F. Supp. 3d 726, 730 (E.D. Ky. 2022). In considering whether to grant a party's request for

temporary injunctive relief, a court considers: (1) whether the moving party is likely to succeed on the merits of its claim; (2) whether the moving party would likely suffer irreparable harm without the injunction, (3) whether granting the injunction would cause substantial harm to others, and (4) whether an injunction would serve the public interest. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008); *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459 (6th Cir. 1997) (*en banc*). "[T]he four factors are not prerequisites to be met, but rather must be balanced as part of a decision to grant or deny injunctive relief." *Performance Unlimited*, 52 F.3d 1373, 1381 (6th Cir. 1995) (quoting *In re DeLorean*, 755 F.2d 1223, 1229 (6th Cir. 1985)).

### III.

Applying the factors outlined above to CE Central's motion, the Court finds that the plaintiff's request for injunctive relief is not warranted at this stage of the litigation.

**A. Likelihood of Success on the Merits**

Although a close question is presented, CE Central has not demonstrated that it is likely to succeed on the merits. *Mich. State v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997) ("If a movant cannot show a strong likelihood of success on the merits [then] a preliminary injunction is unwarranted."); *Online Merchs. Guild v. Cameron*, 995 F.3d 540, 560 (6th Cir. 2021) ("likelihood of success on the merits often proves determinative."). Within the Sixth Circuit, preliminary relief is an available remedy for trademark infringement if a plaintiff establishes that its mark is "protectible" and shows that the defendant's conduct creates a likelihood of confusion for consumers regarding the origin of the goods or services resulting from defendant's use of the disputed mark. *Frisch's Rests., Inc. v. Elby's Big Boy, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982); *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 763 (6th Cir. 2005).

A plaintiff must first demonstrate that it possesses a protectible mark to receive protection against trademark infringement. *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 512-13 (6th Cir. 2007). Registration of a mark on the Principal Register of the USPTO creates a rebuttable presumption that a trademark is valid, meaning that it is either inherently distinctive or descriptive with secondary meaning and, therefore, protectable under federal trademark law. *Id.* at 513; 15 U.S.C. § 1115(a). In this case, CE Central properly trademarked its name which is has used nationwide. While it appears that CE Central likely maintains a protectible mark, the trademarked "Nursing CE Central" has not yet reached incontestable status because it has only been registered since 2020. *See* U.S.C. § 1065. *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280-82 (6th Cir. 1997) (observing that a mark becomes incontestable if it is not successfully challenged within five years of its registration).

Beyond establishing a protectible mark, a plaintiff must also show that the defendant's conduct creates a likelihood of confusion regarding the origin of the goods or services offered by a defendant. *Tumblebus*, 399 F.3d at 763; *Daddy's Junky Music*, 109 F.3d at 280; *Leelanau Wine Cellars*, 502 F.3d at 518. Courts within the Sixth Circuit consider a variety of factors in assessing likelihood of confusion among consumers. *Frisch's Rests.*, 670 F.2d at 648. They include: (1) strength of the plaintiff's mark; (2) relatedness of the goods or services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines.

Several factors are particularly probative in evaluating CE Central's claim in this case. *Sunless, Inc. v. Palm Beach Tan, Inc.*, 33 F.4th 866, 869 (6th Cir. 2022) (observing that the

court had no obligation to consider arguments not presented to it). However, these factors are simply a guide to help determine whether confusion would likely result from simultaneous use of the two contested marks, meaning that none are dispositive. *Gray v. Meijer, Inc.*, 295 F.3d 641, 646 (6th Cir. 2002). The strength of the mark, similarity between the marks, and evidence of actual confusion often are the "most important factors." *Kibler v. Hall*, 843 F.3d 1068, 1082–83 (6th Cir. 2016).

### ***Strength of the Plaintiff's Mark***

A mark's strength is determined by its "(1) 'conceptual strength,' or 'placement of the mark on the spectrum of marks,' which encapsulates the question of inherent distinctiveness; and (2) 'commercial strength' or 'the marketplace recognition value of the mark.'" *Progressive Distrib. Servs., Inc. v. United Parcel Serv., Inc.*, 856 F.3d 416, 428 (6th Cir. 2017) (quoting *Maker's Mark Distillery, Inc., v. Diageo N. Am., Inc.*, 679 F.3d 410, 419 (6th Cir. 2012)). Because the strength of a trademark depends on the interplay between conceptual and commercial strength, the existence or non-existence of inherent distinctiveness is not alone determinative. *See Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 631-32 (6th Cir. 2002) (noting that a mark can be inherently distinctive but not especially strong if it fails to attain broad public recognition). While a mark's distinctiveness sets a baseline for its strength, its commercial recognition can change that calculus. *Maker's Mark*, 679 F.3d at 419–21. As a result, a conceptually strong mark with minimal public recognition can be weak, while a conceptually weak mark that is widely recognized by the public can be strong.

At the outset, CE Central's mark is not entitled to a presumption of distinctiveness because it has not risen to the level of "incontestable" status contemplated by Congress given its relatively recent trademarking. 15 U.S.C. § 1065 § III.A(1). But that presumption can be

overcome. Conceptual strength otherwise is "measured by the mark's distinctiveness: whether it is generic, descriptive, or inherently distinctive." *See Detroit Coffee Co., LLC v. Soup for You, LLC*, 396 F. Supp. 3d 754, 767 (E.D. Mich. 2019). Here, the plaintiff's mark is descriptive, meaning it "specifically describes a characteristic or ingredient" of the offered service, which is continued nursing education in this case. *Progressive Distrib.*, 856 F.3d at 428. A descriptive mark that is not inherently distinctive may, nonetheless, enjoy the benefit of trademark protection if it develops a "secondary meaning." *Leelanau Wine Cellars*, 502 F.3d at 512 (noting that "[a] descriptive mark achieves secondary meaning when in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product."). Additionally, the Sixth Circuit has "long held that 'evidence of intentional copying shows the strong secondary meaning of [a product] because [t]here is no logical reason for the precise copying save an attempt to realize upon a secondary meaning that is in existence.'" *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 639 (6th Cir. 2002) (quoting *Ferrari S.P.A. Esercizio Fabriche Automobili E Corse v. Roberts*, 944 F.2d 1235, 1239 (6th Cir. 1991)).

Plaintiff's mark vaguely identifies its service as nursing related. Yet, it includes more generic terms like "CE" and "Central" that combine to form a weak secondary meaning among the public. The plaintiff's better argument, however, is that its mark could be regarded as conceptually strong in large part because Colibri, through its third-party ad manager, attempted to copy the CE Central mark by simply changing the capitalization of a single letter in online advertisements.

Even assuming that CE Central's mark is conceptually strong, the Sixth Circuit has emphasized that a finding of distinctiveness is "not the end of the inquiry." *Progressive*

*Distrib.*, 856 F.3d at 430 (quoting *Maker's Mark*, 679 F.3d at 419). A mark's commercial strength depends on public recognition, or the extent to which people associate the mark with the product or service it offers. *Abercrombie*, 280 F.3d at 639. In trademark cases, survey evidence is the superior method to measure commercial recognition within a particular marketplace, but CE Central offers none to support its mark's strength. *Progressive Distrib.*, 856 F.3d at 430. Instead, it relies on the fact that its principal business name is the mark in question, which has been used in soliciting customers for its continuing education services across the country. Still, the plaintiff makes no meaningful showing that the public, or even those in the market in which it competes, readily recognizes its name. That failure condemns its mark as a likely weak one, and this factor cuts against the plaintiff's position.

### *Relatedness of the Goods or Services*

Colibri offers the same or substantially the same continuing education services for nurses as CE Central. This fact weighs in favor of the plaintiff.

### *Similarity of the Marks*

Similarity of the marks is a factor that should be given considerable weight. *Daddy's Junky Music*, 109 F.3d at 283. Courts should consider whether "a given mark would confuse the public when viewed alone, in order to account for the possibility that sufficiently similar marks may confuse consumers who do not have both marks before them but who may have a general, vague, or even hazy, impression or recollection of the other party's mark." *Id.* (internal quotations omitted). Here, the marks are almost identical as standalones, except that Colibri seems to use a lower case "e" in the middle term of "Nursing Ce Central." It is notable that the defendant also includes within the same ad containing the plaintiff's trademarked name a reference to 'Elite Learning', a mark for which it has submitted a trademark application.

-7-

Even more, the defendant's ad is differentiated by being a "sponsored" one. [Record No. 16, p. 11] Colibri's ad appears directly above CE Central's own ad, which lists its name in the URL and provides a link to its website following a Google search. *Id*.

Still yet, any use of "Nursing Ce Central" creates at least some likelihood of confusion. Nurses who have used the plaintiff's program in the past or who heard of it through word of mouth, for example, may search the trademarked name on Google and find the defendant's website instead of the plaintiff's website. Consumers could reasonably believe that the Colibri's website was that of CE Central's or that the two were affiliated based on use of the same name in the online ad. This factor weighs in the plaintiff's favor.

### *Evidence of Actual Confusion*

CE Central has not offered any evidence of actual harm, which undercuts to some degree the argument that Colibri's conduct has created confusion among consumers. Although "[e]vidence of actual confusion is undoubtedly the best evidence of likelihood of confusion . . . a lack of such evidence is rarely significant, and the factor of actual confusion is weighted heavily only where there is evidence of past confusion." *Daddy's Junky Music*, 109 F.3d at 284. Without any evidence of actual or past confusion among consumers in the market for continued nursing education services, however, the Court assumes that the impact of Colibri's reference to CE Central's trademarked name is undetermined. While the lack of evidence should not be construed to mean that the defendant's conduct has caused no (or even limited) commercial harm, the plaintiff finds no support under this otherwise neutral factor.

### *Marketing Channels Used*

This factor depends on "how and to whom the respective goods or services of the parties are sold." *Progressive Distrib.*, 856 F.3d at 434 (quotation omitted). The "simultaneous use

of the Internet as a marketing tool exacerbates the likelihood of confusion," given that "entering a web site takes little effort." *Audi AG v. D'Amato*, 469 F.3d 534, 544 (6th Cir. 2006) (quotation omitted). It appears that both the plaintiff and the defendant rely on the internet as a sales tool, which indicates they share a primary marketing channel. Even though CE Central failed to clarify whether it markets its services primary online or in alternative channels, both continuing nursing education providers appear to use substantially the same marketing channels to target the same class of consumers. This factor supports the plaintiff's motion.

### *Likely Degree of Purchaser Care*

The standard normally employed under this prong is the typical buyer exercising ordinary caution. *Homeowners Grp., Inc v. Home Marketing Specialists, Inc.*, 931 F.2d 1100-1111 (6th Cir. 1991). A "higher degree of care, in contrast, is appropriate where the buyer in question has a particular expertise or sophistication." *Therma-Scan*, 295 F.3d at 638. The expectation "of greater attention, where appropriate, diminishes the likelihood of confusion." *Id*. The services offered by both parties in this case seem to target licensed and practicing nurses searching for a way to fulfill continuing education requirements, meaning that a higher standard likely applies based on their level of consumer sophistication. The purchase of continuing education services by a licensed professional "is not an impulsive purchase of an inexpensive item made at the checkout lane of a grocery store." *Progressive Distrib.*, 856 F.3d at 435. Colibri noted that "consumers of continuing education courses must ensure that (i) the service provider is accredited as a continuing education provider and (ii) the continuing education courses are accepted by the individual's state board of nursing." [Record No. 16, p. 13] Thus, to the more careful customer, Colibri's use of CE Central's name in its ads, which also contained reference to its own marks for which it has requested trademarks,

likely does not trick the customer into believing its purchasing Plaintiff's services. The consumer operating with a higher degree of purchaser care would likely understand that clicking on the Colibri's ad would bring them to Colibri's website, which contains no reference to the Plaintiff or its services. Thus, this factor weighs in favor of the defendant.

### *Intent of the Defendant*

A defendant's intent is considered strong evidence in determining the likelihood of consumer confusion. *Daddy's*, 109 F.3d at 286 (citing *Homeowners Grp.*, 931 F.2d at 1111). Within the Sixth Circuit, "the appropriate 'intent' to focus on is not the intent to copy but rather the intent to deceive or confuse." *Groeneveld Trans. Efficiency. v. Lubecore Intern*, 730 F.3d 494, 514 (6th Cir. 2013); *Ferrari,* 944 F.2d at 1243 (discussing whether a defendant intended "to deceive purchasers and thus derive a benefit from another's name and reputation" or rather to pursue less malicious goals).

CE Central suggests that Colibri's use of "Nursing Ce Central" amounts to an intentional effort to deceive consumers following a failed joint business venture and, therefore, benefit the defendant financially by posing as the plaintiff to lure potential customers. But Colibri argues that it lacked knowledge of reference to the plaintiff's trademarked name in its ads prior to CE Central's request for judicial intervention because a third party, through Google, manages its online marketing activities. [Record No. 16] CE Central makes no meaningful showing that Colibri intended to deceive customers by using its trademarked name since Colibri had delegated online advertising responsibilities to a third party. Without evidence to the contrary, this factor does not support a finding in the plaintiff's favor. It has not demonstrated to the Court's satisfaction that the defendant intended to deceive or confuse consumers.

*Likelihood of Expanding Product Lines*

This factor is not relevant because the parties operate within the same market and without intentions to expand beyond it. Neither party has presented evidence indicating that either intends to expand its business operations, or that any such expansion would weigh toward a finding of likelihood of confusion.

*Balancing the Factors*

Considering the *Frish* factors, the undersigned concludes that CE Central has not carried its burden of proving that the Colibri's use of the CE Central trademarked name would create a sufficient likelihood of confusion for consumers. The factor most favorable to the Plaintiff is the similarity of the mark used by Defendant, which is nearly identical to Plaintiff's trademarked name. But the Court must weigh the factors against one another. Although the facts present a close case in terms of net balance, multiple factors to which courts give serious weight—the strength of Plaintiff's mark, likely degree of purchaser care, and defendant's intent—result in a conclusion that the plaintiff has not demonstrated a sufficient degree of likely consumer confusion. Absent such showing, the plaintiff has failed to demonstrate a likelihood of success on the merits.

### B.  Likelihood of Irreparable Harm

The Court further considers whether CE Central has demonstrated that it will likely suffer actual and imminent harm—rather than harm that is speculative or unsubstantiated—to obtain preliminary relief. *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006). Although no factor alone is controlling in determining whether to grant injunctive relief, "the existence of an irreparable injury is mandatory." *D.T. v. Sumner Cnty. Schools*, 942 F.3d 324, 327 (6th Cir. 2019). Courts note that "even the strongest showing on the other three factors cannot

"eliminate the irreparable harm requirement." *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982). Indeed, the Sixth Circuit considers this factor "indispensable; therefore, "[i]f the plaintiff isn't facing imminent and irreparable injury, there's no need to grant relief now as opposed to at the end of the lawsuit." *D.T.*, 942 F.3d at 327.

CE Central argues that a restraining order is necessary to prevent Colibri from continuing to use its business name in digital advertisements which it claims causes irreparable harm to its reputation and to its competitiveness in the industry. [Record No. 5] Colibri, however, has ceased the conduct that CE Central sought to prevent in its motion. [Record No. 16] Colibri acknowledged in its response that it instructed Google, its third-party ad manager, to "discontinue AdWords campaigns that referenced" CE Central's trademarked name once it learned of this dispute. [Record No. 16] During the hearing on CE Central's motion, the plaintiff confirmed that Colibri's online ads no longer referenced its trademarked name. Instead, CE Central cited as harmful the *possibility* of future reference to its trademarked name by Colibri absent a grant of injunctive relief.

But merely pointing to speculative future harm is insufficient to warrant injunctive relief. The plaintiff must show that "irreparable injury is likely in the absence of an injunction." *Winter*, 555 U.S. 7, 8 (2008). CE Central has failed to demonstrate the likelihood of injury should Colibri resume the conduct at issue, even as private entreaties between the parties have failed to produce a formal agreement governing future use of the trademarked name. The plaintiff's failure to show a likelihood of irreparable injury severely undercuts its request for injunctive relief, either in the form of a temporary restraining order or a preliminary injunction.

### C. The Potential of Substantial Harm to Others

The Court further considers whether issuance of injunctive relief will cause substantial harm to others. Neither party has presented any meaningful evidence that any party will suffer harm if the defendant is enjoined from referencing or using CE Central's trademarked name. To the extent that an injunction preventing Defendant from referencing CE Central's name may harm Colibri regarding comparative advertising, that harm is likely self-inflicted. *See Heaven Hill Distilleries v. Log Still Distilleries, LLC*, 575 F. Supp. 3d 785, 843-44 (W.D. Ky. 2021) (concluding that an infringer who decided to willfully expend funds on infringing activity cannot claim those losses as grounds for denying injunctive relief). Thus, this factor weighs in favor of granting injunctive relief.

### D. The Public Interest

The dual aspirations of trademark law are to protect consumers and producers in the marketplace from deceit. At its most basic level, trademark infringement not only "inhibits competition" but also "deprives consumers of their ability to distinguish among the goods of competing manufacturers." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 854 n.14, 102 S. Ct. 2182, 72 L. Ed. 2d 606 (1982). Indeed, an injunction against counterfeits advances "two fundamental purposes of trademark law: preventing consumer confusion and deception in the marketplace and protecting the trademark holder's property interest in the mark." *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 383 (6th Cir. 2006).

These goals are best accomplished when all market participants respect the legal boundaries drawn by trademark principles. By referencing the plaintiff's trademarked name in its online advertisements managed by a third-party, Colibri entered a thicket that risks

inhibiting competition and misleading consumers—even though subsequent points in a prospective online transaction makes no reference to Plaintiff's trademarked name at all. It contends that its ads mentioned the plaintiff's trademark merely for comparative advertising purposes. Yet, because CE Central must rely on own name and reputation for operation in the continuing nursing education market, and because consumers depend on information not cloaked in deceit before deciding whether to purchase goods or services, the public interest prong tips in the plaintiff's favor.

## IV.

Although sustained third-party use of a trademarked name to benefit the trademark owner's competitor presents a complicated question of substantive law, the Court must balance the above factors to determine whether judicial intervention is warranted. In doing so, this Court concludes that the plaintiff has not carried its burden of demonstrating that it will likely succeed on the merits. But of greater consequence, CE Central has failed to show that, at this stage of the litigation, it will suffer likely irreparable harm in the absence of judicial intervention. And as noted above, the Sixth Circuit has described this factor as "indispensable" in the calculation to provide the extraordinary form of relief the plaintiff seeks.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** that Plaintiff Nursing CE Central LLC's Motion for Temporary Restraining Order and Preliminary Injunction [Record No. 5] is **DENIED**.

Dated: August 24, 2023.

*Danny C. Reeves*, Chief Judge
United States District Court
Eastern District of Kentucky