UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| NURSING CE CENTRAL LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 23-232-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| COLIBRI HEALTHCARE, LLC, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Nursing CE Central LLC ("Nursing CE Central") filed suit against Defendant Colibri Healthcare, LLC ("Colibri") alleging trademark infringement and unfair competition in violation of the Lanham Act based on Colibri's reference to the registered "Nursing CE Central" name in its online advertisements.  Colibri filed two counterclaims after this Court denied Nursing CE Central's motion for injunctive relief that sought to prohibit Colibri from referencing the trademarked name.  [Record No. 32]  Through these claims, it alleges that Nursing CE Central engaged in tortious interference with a prospective business advantage and contends that the plaintiff's registered name should be canceled pursuant to 15 U.S.C. § 1119.  In response, Nursing CE Central filed a motion to dismiss both counterclaims.  [Record No. 35]  For the reasons that follow, Plaintiff's motion will be granted regarding the first counterclaim but denied regarding the second.

## I.    Background

Nursing CE Central provides continuing education courses for nurses.  It trademarked "Nursing CE Central" with the U.S. Patent and Trademark Office ("USPTO") as its primary

business name on August 18, 2020.  [Record No. 1-1 (Reg. No. 6,129,162)]   Colibri offers

substantially the same services for nurses and other service professionals.  Between April 2021

and June 2022, Nursing CE Central and Colibri discussed a potential joint business venture,

but that arrangement did not materialize.  [Record No. 1, pp. 6]  After negotiations ended,

Colibri contracted with Google, Inc. in October 2022 to provide and manage its online

advertising and marketing services through the Google AdWords program. [Record No. 16]

Colibri spends approximately $100,000 per month for its online ad campaigns through Google.

Thus, it asserts that "[a] large part of [its] business and competitive advantage is derived from

its ability to market its business and products to existing and prospective customers" online.

[Record No. 37]

　　　Soon after this case was filed, Nursing CE Central sought to preliminarily enjoin

Colibri from using its  name in the text of its Google ads, claiming the online ads deceptively

directed consumers to the Colibri's website to poach potential customers.[1]  Colibri conceded

that it referenced the trademarked name in its ads, but denied violating the Lanham Act,

arguing that the mark lacked the requisite distinctiveness in the public necessary to cause

consumer confusion.  [Record No. 16]  Nonetheless, the company instructed Google to halt

any reference to "Nursing CE Central" in its ads.  Colibri alleges that around this time Nursing

CE Central directly contacted Google, "which resulted in Google removing all of Colibri's

---

[1]　　　Nursing CE Central could not meet the requirements necessary for preliminary relief, which resulted in the motion for injunctive relief being denied.  However, the Court warned Colibri against using deceptive tactics to unlawfully compete with Nursing CE Central. [Record No. 24]

advertisements that referenced the phrase Nursing CE." [*Id*.] Nursing CE Central neither admits nor denies contacting Google and Colibri offers no details of their alleged discussions.[2]

Approximately three weeks after Google removed Colibri's ads referencing "Nursing CE", the online platform reinstated them following an appeal. [Record No. 37] However, Colibri claims that it "spent additional monies bidding on new keywords" and expended resources "corresponding with Google support and preparing new online advertisements" in the intervening period, resulting in a loss of potential customers and revenue. Nursing CE Central disclaimed exclusive rights to this descriptive phrase (and individually to the terms "Nursing" and "CE") when it registered its business name. [*Id*.] As a result, Colibri contends that Nursing CE Central's actions constitute tortious interference. And it argues as a separate but ancillary claim that Nursing CE Central's trademark registration should be cancelled.

## II.   Legal Standard

Pleadings standards demand "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, courts must "construe the [claim] in the light most favorable to the [complainant], accept its allegations as true, and draw all reasonable inferences in favor of the [complainant]." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (discussing Fed. R. Civ. P. 12(b)(6)). The same deference does not extend to bare assertions of legal conclusions, however, and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papsan v. Allain*, 478 U.S. 265, 286 (1986).

---

[2]      The Court presumes that any purported conversation focused on Nursing CE Central's registered trademark and its pending infringement action.

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). A claim is "plausible" if a court can draw a "reasonable inference" that the accused party is liable for the alleged misconduct. [*Id.*] When a complaint "pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." [*Id.*] (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 557 (2007). A court must dismiss any claim "where the well-pleaded facts" permit the court to infer only "the mere possibility of misconduct." [*Id.*] Thus, a defendant must show "either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory." *See Red Hed Oil, Inc. v. H.T. Hackney Co.*, 292 F. Supp. 3d 764, 772 (E.D. Ky. 2017) (quoting *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014)). Dismissal is warranted when that showing is not met.

### III.   Discussion

### A. Tortious Interference

Tortious interference occurs when a person or entity, without privilege to do so, induces or otherwise purposely causes a third party not to enter into or continue a business relationship with another, thereby causing harm. RESTATEMENT (SECOND) OF TORTS § 766 (1979). A claimant must establish six elements under Kentucky law to recover for tortious interference with a prospective business advantage. They are: (1) the existence of a valid business relationship or its expectancy; (2) defendant's knowledge of that relationship; (3) defendant's intentional act of interference with the relationship; (4) defendant's improper motive for interfering; (5) causation; and (6) special damages. *Ventas, Inc. v. Health Care Property*

*Investors, Inc.*, 635 F. Supp. 2d 612, 621 (W.D. Ky. 2009) (citing *CMI, Inc. v. Intoximeters, Inc.*, 918 F. Supp. 1068, 1080 (W.D. Ky. 1995)).

The party seeking recovery "must show malice or some significantly wrongful conduct." *See NCAA v. Hornung*, 754 S.W.2d 855, 857 (Ky. 1998). As a result, such cases "have turned almost entirely upon the defendant's motive or purpose, and the means by which he has sought to accomplish it." *In re Hill*, 957 F.3d 707, 714 (6th Cir. 2020). If a defendant has a "legitimate interest to protect," it may not be liable for tortious interference, regardless of motive. *See Dennison v. Murray State Univ.*, 465 F. Supp. 2d 733, 756-57 (W.D. Ky. 2006) (citing *Hornug* 752 S.W. 2d at 859). Therefore, to survive dismissal of this claim, Colibri must offer some evidence that Nursing CE Central's motive for contacting Google constituted malice rather than an intent to protect its own legitimate business interests. *See ATC Distrib. Grp. Inc., v. Whatever It Takes Transmission & Parts, Inc.*, 402 F.3d 700, 717 (6th Cir. 2005).

Many of the elements are met under the uncontested facts presented. However, the parties disagree regarding which of Colibri's relationships could constitute a valid business relationship with Google or potential customers the company reaches through its online ads. A business relationship exists when there is "a reasonable likelihood or a probability, not mere wishful thinking" that one exists or will result. *See Lucas v. Monroe County*, 203 F.3d 964, 979 (6th Cir. 2000). To demonstrate such a reasonable likelihood, Colibri only needs to prove a current or anticipated business relationship with a third party. *Ventas*, 635 F. Supp. at 621-622 (noting that only a reasonable likelihood of a business relationship occurring is sufficient, meaning absolute certainty is not required). And the reasonable likelihood of a relationship need only exist prior to the interference.

- 5 -

Nursing CE Central challenges whether any valid business relationship exists between Colibri and Google.  It seems to argue that Colibri cannot prove this element because "Google did not permit it to bid on the phrase 'Nursing CE' as a keyword in a Google AdWords campaign."  The plaintiff's theory is that Colibri's rejected participation in the online ad auction prevented the company from establishing or maintaining a valid business relationship with either the platform itself or with prospective customers.  [Record No. 35]  And as the Sixth Circuit has recognized, a disappointed bidder with only an expected chance of winning a bid does not have a valid expectancy.  *See EBI–Detroit, Inc. v. City of Detroit,* 279 F. App'x. 340, 352 (6th Cir. 2008).

But as Colibri points out, its claim for tortious interference is based on Google's removal of its ads referencing "CE Central" rather than its inability to cast a winning bid in an online auction.  Colibri emphasizes that its "demonstrated history of successfully soliciting business through online advertising" means that it had a "legitimate expectation of entering into valid business relationships with customers."  [Record No. 37]

The Court agrees that advertising in a way that has been successful in the past could reasonably predict probable business relationships with new customers.  [Record No. 37]  Further, interference with a relationship of this kind could impact anticipated commercial activity, thereby proving the existence of a valid business relationship.  Regardless of whether the recognized third party for the purpose of satisfying the first prong is in fact a prospective customer reached online through a Google AdWords campaign or with Google itself, Colibri overcomes this  first hurdle.  The record also indicates that Nursing CE Central had knowledge of Colibri's advertising model where Google showcased its advertisements that built a reasonable expectation of attracting new customers, satisfying the second element.

- 6 -

Next, and as noted above, the act of interference must be intentional to sustain a tortious interference claim. *See Hornung*, 754 S.W. 2d at 857. Here, Colibri claims that Google refused to run its ads featuring "CE Central" after being directly contacted by a representative of Nursing CE Central. [Record No. 37] Painting with a broad brush, Colibri alleges that its competitor engaged in unspecified "acts to prevent Colibri from lawfully contracting for advertising services under Google's AdWords program, which in turn interfered with Colibri's business in selling its products and services to others." [Record No. 35] It further argues that Google's actions were "taken at the request" of its aggrieved competitor, but nothing more is offered to substantiate the alleged interference with Colibri's business interests. [Record No. 37] Colibri provides no evidence to prove the content of the alleged communication and offers only speculation that the contact ever occurred. Although Nursing CE Central does not admit the allegation, it concedes that "no one would be surprised" if a representative contacted Google after its competitor previously admitted to using Nursing CE Central's registered mark in deceitful online ads. [Record No. 35]

This leads to the "motive" prong. Assuming Nursing CE Central committed an intentional act of interference with Colibri's prospective business opportunities, Colibri must provide some evidence that the interference came from a competitor operating with improper or malicious intent. It is true that Colibri admitted to using Nursing CE Central's trademarked name around the time the alleged interference occurred. And this might explain the alleged interference as a retaliatory action. But "simply attempting to advance one's own legitimate economic interests at the expense of another's interests does not constitute malice." *ATC Dist. Grp.*, 402 F.3d at 717. If Nursing CE Central contacted Google about its competitor's improper use of its registered name, it likely did so to preserve its legitimate economic

interests. The company had a right to complain to Google, even if its complaint led to unexplained or unprompted actions taken by the search engine. Any reference to "Nursing CE Central" by Colibri in online ads likely created at least some likelihood of consumer confusion. And as this Court noted previously:

> Nurses who have used the plaintiff's program in the past or who heard of it through word of mouth, for example, may search the trademarked name on Google and find the defendant's website instead of the plaintiff's website. Consumers could reasonably believe that Colibri's website was that of CE Central's or that the two were affiliated based on use of the same name in the online ad.

[Record No. 24]

Of course, reference to "CE Central" is slightly different. Even though the descriptive phrase is more vague and Nursing CE Central has no exclusive right to use it, the phrase is not entirely indistinct. It bears a glaring resemblance to the mark that Colibri admitted to using for its own commercial benefit. And as Nursing CE Central notes, Google may have been "understandably suspicious of a phrase so close to the one Colibri stopped using because of a trademark infringement lawsuit." [Record No. 35] Perhaps Google also believed that reference to such a closely related phrase by a competitor known to copy the registered name would cause harm to Nursing CE Central's legitimate economic interests—or even expose Google to liability. Many explanations can justify Google's actions. But the factual matter presented in the counterclaim does not amount to more than the mere possibility that a malicious motive on the part of Nursing CE Central led to Colibri's inability to incorporate a particular keyword into its online ads.

The remaining elements of causation and damages are unchallenged by Nursing CE Central, but a brief analysis of each removes doubt that they are met. In Kentucky, intentional

torts require proof of proximate cause. *Ky. Laborers Dist. Council Health & Welfare Tr. Fund v. Hill & Knowlton, Inc.*, 24 F. Supp. 2d 755, 762 n. 1 (W.D. Ky. 1998). Therefore, the act must be "a substantial factor in bringing about the harm." *Bailey v. North Am. Refractories Co.*, 95 S.W.3d 868, 871 (Ky. App. 2001). The alleged interference here (specifically, the alleged communication between Nursing CE Central and Google) satisfies this element.

Finally, to sustain a claim for tortious interference, Colibri must prove that it actually suffered damages as a result of Nursing CE Central's interference. *In re Davis*, 334 B.R. 874, 886 (W.D. Ky. 2005). Colibri claims that it suffered lost revenue as a result of the alleged interference, which the Court accepts as true for purposes of resolving the instant motion because Nursing CE Central does not challenge the assertion.

In summary, without a clear demonstration that Nursing CE Central actually contacted Google with a malicious motive to harm Colibri's business prospects, a claim of tortious interference cannot succeed. And because there is insufficient evidence that Nursing CE Central acted with such a motive based on the facts pleaded, the motion to dismiss Colibri's claim for tortious interference will be granted.

## B.  Cancellation of Plaintiff's Registered Mark

Colibri also seeks cancellation of Nursing CE Central's registered name in the Principal Register under 15 U.S.C. § 1119, which confers power on federal courts to cancel trademark registrations in certain circumstances.[3]  According to the Lanham Act, "in any action involving a registered mark the court may determine the right to registration, order the cancellation of

---

[3]      Specifically, Colibri seeks to cancel U.S. Registration No. 6,129,162 issued by the USPTO.

registrations, in whole or in part, restore cancelled registrations, and otherwise rectify the register with respect to the registrations of any party to the action." *See Advance Stores Co., Inc. v. Refinishing Specialties, Inc.*, 948 F. Supp. 643, 653 (W.D. Ky. 1996). In other words, a request for cancellation of a trademark registration is really a demand for a certain type of equitable relief, rather than a claim in and of itself. *See Kentucky Mist. Moonshine, Inc. v. Univ. of Kentucky*, 192 F. Supp. 3d 772, 789-790 (E.D. Ky. 2016).

A party seeking cancellation of a registered mark under 15 U.S.C. § 1119 must meet two requirements within this circuit. *CFE Racing Products, Inc. v. BMF Wheels, Inc*., 793 F.3d 571, 593 (6th Cir. 2015). Specifically, the moving party: (1) must show that it has standing to petition for cancellation, and that (2) there are valid grounds for discontinuing registration. [*Id*.] Standing requires only that the petitioner have a "real interest" in the cancellation proceeding, which can mean the party is likely to be damaged if the registration is not cancelled.[4] *Graminex, LLC v. Aktiebolaget Cernelle*, 451 F. Supp. 3d 732 (E.D. Mich. 2020). This forces the party challenging the registration to show a direct and personal stake in the outcome of the proceeding, which is often commercial in nature. *See Cunningham v. Laser Golf Grp*., 222 F. 3d 943, 945 (Fed. Cir. 2000); *Hoenig Developments, Inc. v. Dial Indus., Inc.*, 213 F. Supp. 3d. 895, 909 (W.D. Ky 2016); *Topnotch Innovations, LLC v. Dean*, 2020 WL 6115008 (S.D. Ohio July 28, 2020).

---

[4]     The Sixth Circuit has not provided sufficient guidance on this question. Therefore, district courts are left with the responsibility of determining whether standing exists by measuring what constitutes a "real interest" in the outcome of a proceeding. Notably, the decision in *CFE Racing Products* bases its two-part test on an Eleventh Circuit case that requires a party to show that "it is likely to be damaged" to obtain standing. *See Coach House Rest. v. Coach & Six Rest.*, 934 F.2d 1551, 1557 (11th Cir. 1991).

Here, Nursing CE Central claims that Colibri lacks standing because the company does not presently use the mark and has not expressed an intent to resume using the mark in the future, thereby obfuscating the likelihood of harm.[5]  Citing a district court case, the plaintiff observes that, "[w]ithout proof of actual skin in the game, the [counterclaim] is no more than a vehicle for the vindication of the value interests of concerned bystanders who have no right to ask a federal court its advice about the validity of a trademark registration."[6]  *Graminex,* 451 F. Supp. 3d at 741 (quoting *United States v. SCRAP,* 412 U.S. 669, 687 (1973)).

In response, Colibri contends that Nursing CE Central is merely "using the registration as a sword" against the company as an alleged trademark infringer.  In other words, it cites its position as a party facing potential monetary damages and speculative harm at some future point to demonstrate that it has a real interest in the registered mark's legal status.  But as another court observed in a related context, "[t]hat reasoning does not hold up . . . against the proscriptions against allowing a party to proceed when no actual injury can be demonstrated."  *Graminex*, F. Supp. 3d at 742.  Further, the notion that simply being forced to litigate a trademark infringement suit is injury enough for Colibri to have standing to pursue cancellation of Nursing CE Central's trademark registration lacks support within this circuit.  In fact, Colibri does not cite any case that supports this proposition.  Surely Congress did not

---

[5]    Nursing CE Central also seems to  claim that its mark could only be cancelled pursuant to a declaratory judgment.  It claims that "[h]ere, there is no demand for a declaration of rights but only a demand for cancellation."  [Record No. 35]  However, the plaintiff does not cite to any binding authority that supports that assertion.

[6]    Some circuits require a heightened bar for a party to prove it maintains standing in a trademark cancellation claim.  Within the Second Circuit, for example, a party seeking cancellation must "adequately allege that he or she has engaged in a course of conduct evidencing a definite intent and apparent ability to commence use of the marks on the product."  *Saleh v. Sulka Trading Ltd*., 957 F.3d 348, 354 (2d Cir. 2020).

intend to greenlight the ability of any party to have standing to seek cancellation of a registered mark when it enacted Section 1119 based solely on status as a defendant in a related trademark infringement claim.

Colibri makes no argument that it maintains a commercial interest in the determination of the mark's legal validity.  It  even goes so far as claiming that a commercial interest is unnecessary to establish standing.  But surely Colibri has at least a semblance of a commercial stake in the outcome here.  After all, the company concedes that it previously referenced the registered mark in its online ads for the purpose of reaching customers and acknowledges that it filed the instant counterclaim to "protect Colibri's right to prospectively use the phrase 'nursing CE central' in its ordinary and descriptive or generic sense in marketing its courses" once again.  The only apparent reason Colibri does not presently reference the registered name that purportedly amounts only to a sequence of descriptive terms in online ads is because it faces the instant trademark infringement action.  Ultimately, however, it appears that Colibri has a commercial interest in the outcome of a proceeding to determine the mark's legal validity and, therefore, has standing to challenge the mark's validity itself.

But standing to sue is only one part of the equation.  To convince a court that cancellation of a trademark is appropriate, the party must likewise present a valid ground to discontinue registration.  As Colibri observes, a party challenging a trademark's registration may rely on any ground that could have prevented the registration in the first place.  *See* 15 U.S.C. § 1064.

Colibri argues that Nursing CE Central's mark is "merely descriptive" and emphasizes that a merely descriptive mark is ineligible for registration on the Principal Register.[7] *See* 15 U.S.C. § 1052(e).  This Court has noted previously that Nursing CE Central's mark is seemingly descriptive.  [Record No. 24]  The mark "specifically describes a characteristic or ingredient" of the offered service, which is continued nursing education in this case. *Progressive Distrib. Servs., Inc. v. United Parcel Serv., Inc.*, 856 F.3d 416, 428 (6th Cir. 2017). Although Nursing CE Central's registered mark combines three descriptive terms to form its principal business name, the name may have grown beyond a mere sequence of generic descriptors.[8]  In fact, a descriptive mark that is not inherently distinctive may, nonetheless, still enjoy the benefit of trademark protection if it develops a "secondary meaning." *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 512 (6th Cir. 2007) (noting that "[a] descriptive mark achieves secondary meaning when in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product.").

---

[7]     The statute provides, in relevant part, that "[n]o trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it consists of a mark which (1) when used on or in connection with the goods of the applicant is merely descriptive or deceptively misdescriptive of them, (2) when used on or in connection with the goods of the applicant is primarily geographically descriptive of them, except as indications of regional origin may be registrable under section 1054 of this title, (3) when used on or in connection with the goods of the applicant is primarily geographically deceptively misdescriptive of them, (4) is primarily merely a surname, or (5) comprises any matter that, as a whole, is functional."

[8]     Colibri claims that the fact that the USPTO required Nursing CE Central to disclaim exclusive rights to the general terms "NURSING" and "CE" before it permitted registration of its mark amounts to "an express admission that these terms are not inherently distinctive and not protectable on the Principal Register at the time of registration." [Record No. 37]

The Sixth Circuit has "long held that 'evidence of intentional copying shows the strong secondary meaning of [a product] because [t]here is no logical reason for the precise copying save an attempt to realize upon a secondary meaning that is in existence.'" *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 639 (6th Cir. 2002) (quoting *Ferrari S.P.A. Esercizio Fabriche Automobili E Corse v. Roberts*, 944 F.2d 1235, 1239 (6th Cir. 1991)). Colibri concedes that it effectively copied Nursing CE Central's mark by referencing is name in online ads, lending credence to the notion that the mark may have achieved a secondary meaning on some level in the public domain. But even though a mark has accumulated some degree of secondary meaning does not necessarily foreclose a challenge that the mark was merely descriptive—and, therefore, deficient—at the time of registration.

At this juncture, it appears that the alleged vagueness of the descriptive terms combined to form Nursing CE Central's name at the time of registration could support an actionable claim by constituting a valid ground for cancellation. As a result, the Court will deny Nursing CE Central's motion to dismiss Colibri's claim challenging its mark's legal validity.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1.     Plaintiff Nursing CE Central's motion to dismiss Defendant Colibri counterclaim alleging tortious interference of a business advantage [Record No. 35] is **GRANTED**.

2.     Plaintiff Nursing CE Central's motion to dismiss Defendant Colibri counterclaim alleging that a valid ground exists to cancel Nursing CE Central's mark [Record No. 35] is **DENIED**.

Dated: January 29, 2024.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky